**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | |
|---|---|
| ALBERT ABRAMS, SHELLY CHURCH, KEVIN CORBETT, EULA DOUGLAS, DELILAH PARKER, and MARTIN PINALES, <br><br> on behalf of themselves and all others similarly situated, <br><br>        Plaintiffs, <br> vs. <br><br> THE KROGER CO., <br> an Ohio corporation, <br><br>        Defendant. | Case No.: <br><br> **CLASS ACTION COMPLAINT** <br><br> DEMAND FOR JURY TRIAL |

Plaintiffs Albert Abrams, Shelly Church, Kevin Corbett, Eula Douglas, Delilah Parker, and Martin Pinales ("Plaintiffs"), individually and on behalf of all others similarly situated ("Class Members"), bring this Class Action Complaint against The Kroger Co. ("Defendant"), and allege, upon personal knowledge as to their own actions and their counsels' investigations, and upon information and belief as to all other matters, as follows:

## I.  INTRODUCTION

1.      Plaintiffs bring this class action against Defendant for its failure to properly secure and safeguard personally identifiable information that Defendant stored on and/or shared using its vendor's "legacy" file sharing platform, including, without limitation, names, contact information, email addresses, phone numbers, home addresses, dates of birth, Social Security numbers, and/or salary information (collectively, "personally identifiable information" or "PII")[1] as well as benefits

---

[1]      Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or

information from the Kroger Employee Health Plan, information to process insurance claims, prescription information such as prescription number, prescribing doctor, medications names and dates, medical history, and/or clinical services (collectively, "personal health information" or "PHI").

2.      According to Defendant's "2019 Fact Book," it operates 2,757 supermarkets and multi-department stores, has 2,270 pharmacies, and employs nearly 500,000 associates.[2] Defendants total 2019 sales were approximately $122 billion.[3]

3.      Defendant's customers and employees entrust Defendant with an extensive amount of their PII and PHI.  Defendant retains this information on computer hardware—even after the customer or employee relationship ends.  Defendant asserts that it understands the importance of protecting such information.

4.      On or before January 22, 2021, Defendant learned that an unauthorized actor breached Defendant's vendor's "legacy" file sharing platform, which Defendant had used to store and/or share the PII and PHI of Plaintiffs and Class Members (the "Data Breach").

5.      On or before February 19, 2021, Defendant learned that, during the Data Breach, the unauthorized actor gained access to files that contained the PII and PHI of Plaintiffs and Class Members, including, but not limited to, names, contact information, email addresses, phone numbers, home addresses, dates of birth, Social Security numbers, salary information, benefits

---

identifying information. 2 CFR § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual. PII also is generally defined to include certain identifiers that do not on their face name an individual, but that are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security number, passport number, driver's license number, financial account number).

[2]      Kroger 2019 Fact Book at 3, *available at* https://s1.q4cdn.com/137099145/files/ doc_downloads/irw/fact_books/2019-Fact-Book.pdf (last visited Apr. 5, 2021).

[3]      *Id.*

information from the Kroger Employee Health Plan, information to process insurance claims, prescription information such as prescription number, prescribing doctor, medications names and dates, medical history, and/or clinical services.

6.      By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' PII and PHI, Defendant assumed legal and equitable duties to those individuals.

7.      The exposed PII and PHI of Plaintiffs and Class Members can be sold on the dark web.  Hackers can access and then offer for sale the unencrypted, unredacted PII and PHI to criminals.  Plaintiffs and Class Members face a lifetime risk of identity theft, which is heightened here by the loss of Social Security numbers.

8.      This PII and PHI was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect the PII and PHI of Plaintiffs and Class Members.

9.      Plaintiffs bring this action on behalf of all persons whose PII and PHI was compromised as a result of Defendant's failure to: (i) adequately protect the PII and PHI of Plaintiffs and Class Members; (ii) warn Plaintiffs and Class Members of its inadequate information security practices; and (iii) avoid sharing the PII and PHI of Plaintiffs and Class Members without adequate safeguards.  Defendant's conduct amounts to negligence and violates federal and state statutes.

10.     Plaintiffs and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) lost or diminished value of PII and PHI; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, and significantly (iv) the continued and certainly an increased risk to their PII and PHI, which: (a)

remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII and PHI.

11.    Defendant disregarded the rights of Plaintiffs and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiffs' and Class Members' PII and PHI was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As the result, the PII and PHI of Plaintiffs and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## II. PARTIES

12.    Plaintiff Albert Abrams is a citizen of California residing in Los Angeles County, California.

13.    Plaintiff Shelly Church is a citizen of Indiana residing in Pike County, Indiana.

14.    Plaintiff Kevin Corbett is a citizen of California residing in Riverside County, California.

15.    Plaintiff Eula Douglas is a citizen of Texas residing in Harris County, Texas.

16.    Plaintiff Delilah Parker is a citizen of Tennessee residing in Davidson County, Tennessee.

17.    Plaintiff Martin Pinales is a citizen of Ohio residing in Hamilton County, Ohio.

18.    Defendant The Kroger Co. is an Ohio corporation, headquartered at 1014 Vine Street, Cincinnati, Ohio.

4

19.    The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiffs.  Plaintiffs will seek leave of court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

20.    All of Plaintiffs' claims stated herein are asserted against Defendant and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

### III.  JURISDICTION AND VENUE

21.    This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one other Class Member is a citizen of a state different from Defendant to establish minimal diversity.

22.    The Southern District of Ohio has personal jurisdiction over Defendant named in this action because Defendant is headquartered in this District and Defendant conducts substantial business in Ohio and this District through its headquarters, offices, parents, and affiliates.

23.    Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant and/or its parents or affiliates are headquartered in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

### IV.  FACTUAL ALLEGATIONS

***Background***

24.    Defendant used its vendor's "legacy" file sharing platform to store and/or share some of Plaintiffs' and Class Members most sensitive and confidential information, including, but not limited to, names, contact information, email addresses, phone numbers, home addresses, dates of birth, Social Security numbers, salary information, benefits information from the Kroger

Employee Health Plan, information to process insurance claims, prescription information such as prescription number, prescribing doctor, medications names and dates, medical history, and/or clinical services, which include information that is static, does not change, and can be used to commit myriad financial crimes.

25.     Plaintiffs and Class Members relied on this sophisticated Defendant to keep their PII and PHI confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.  Plaintiffs and Class Members demand security to safeguard their PII and PHI.

26.     Defendant had a duty to adopt reasonable measures to protect Plaintiffs' and Class Members' PII and PHI from involuntary disclosure to third parties.

### *The Data Breach*

27.     On or about February 19, 2021, Defendant submitted five sample *Notice[s] of Data Breach* to the Attorney General of California.[4]  Although the sample notices vary in the types of individuals affected (*e.g.*, customers vs. employees) and the types of data exposed, they generally discuss the Data Breach as follows:

> **What Happened?**
>
> We were recently made aware of a data security incident affecting Accellion, which was used by the Kroger Family of Companies, as well as many other companies, for secure file transfers. Accellion has confirmed that an unauthorized person gained access to certain Kroger Family of Companies files by exploiting a vulnerability in Accellion's file transfer service. We learned that the Accellion incident impacted Kroger's files on January 23, 2021, took immediate action, and we discontinued use of Accellion's services and investigated the scope and impact of the incident. The incident was isolated to Accellion's services, and our own IT systems have not been affected by this incident. No grocery store data was impacted. However, the Accellion software was used for secure file

---

[4]     Ex. 1.

transfers of certain Human Resources and benefit information of some associates and former associates.

**What Information Was Involved?**

Our investigation into the scope of the incident is ongoing. However, we believe impacted information may include names, email address and other contact information, date of birth, Social Security number, and for some associates or former associates, may have also included certain salary information such as net and gross pay and withholdings. Your impacted information also may include benefits information from the Kroger Employee Health Plan, including your plan, prescription ID and certain claims processing details. While grocery store systems or data were not impacted, customers of the Pharmacy or Little Clinic may receive a separate notice related to this incident if your pharmacy or clinic information was impacted.

**What We Are Doing**

The safety of your personal information is of utmost importance to us. We have discontinued the use of the Accellion service, reported the incident to federal law enforcement, and began an investigation to understand the scope and impact of the incident. In addition, we have arranged for any impacted associate to receive comprehensive credit monitoring and identity theft protection services through Experian for two years at no cost to you.[5]

28.     Defendant admitted in the *Notice[s] of Data Breach* that an unauthorized party gained access to files that contained sensitive information about Defendant's current and former customers and employees, including names, Social Security numbers, dates of birth, home addresses, phone numbers, email addresses, and other information.

29.     In response to the Data Breach, Defendant claims that it "discontinued use of the Accellion service."[6] However, the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure a breach does not occur again have not

---

[5]     Ex. 1 at 19.

[6]     Exs. 1, 3.

been shared with regulators or Plaintiffs and Class Members, who retain a vested interest in ensuring that their information remains protected.

30.     Plaintiffs' and Class Members' unencrypted information may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII and PHI for targeted marketing without the approval of Plaintiffs and Class Members.    Unauthorized individuals can easily access the PII and PHI of Plaintiffs and Class Members.

31.     Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiffs and Class Members, causing their PII and PHI to be exposed.

### *Defendant Acquires, Collects and Stores Plaintiffs' and Class Members' PII and PHI.*

32.     Defendant acquired, collected, and stored Plaintiffs' and Class Members' PII and PHI.

33.     As a condition of providing services to its customers and employing its employees, Defendant requires that its customers and employees entrust Defendant with highly confidential PII and PHI.

34.     By obtaining, collecting, and storing the PII and PHI of Plaintiffs and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the PII and PHI from disclosure.

35.     Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI and relied on Defendant to keep their PII and PHI confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

*Securing PII and PHI and Preventing Breaches*

36.     Defendant could have prevented this Data Breach by properly securing and encrypting the PII and PHI of Plaintiffs and Class Members.  Alternatively, Defendant could have destroyed the data, especially decade-old data from former customers and employees.

37.     Defendant's negligence in safeguarding the PII and PHI of Plaintiffs and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

38.     Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII and PHI of Plaintiffs and Class Members from being compromised.

39.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[7] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[8]

40.     The ramifications of Defendant's failure to keep secure the PII and PHI of Plaintiffs and Class Members are long lasting and severe.  Once PII and PHI is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

---

[7]     17 C.F.R. § 248.201 (2013).

[8]     *Id.*

9

*Value of Personal Identifiable Information*

41.     The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials.  For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[9] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[10] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[11]

42.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[12]

---

[9]     *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*:  https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed Apr. 5, 2021).

[10]    *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*:  https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/  (last accessed Apr. 5, 2021).

[11]    *In the Dark*, VPNOverview, 2019, *available at*:  https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed Apr. 5, 2021).

[12]    Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed Apr. 5, 2021).

43.     What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

44.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[13]

45.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—name, Social Security number, and potentially date of birth.

46.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[14]

---

[13]     Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last accessed Apr. 5, 2021).

[14]     Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Apr. 5, 2021).

47.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

48.     The PII and PHI of Plaintiffs and Class Members was taken by hackers to engage in identity theft or and or to sell it to other criminals who will purchase the PII and PHI for that purpose.  The fraudulent activity resulting from the Data Breach may not come to light for years.

49.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PII and PHI is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[15]

50.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII and PHI of Plaintiffs and Class Members, including Social Security numbers and/or dates of birth, and of the foreseeable consequences that would occur if the PII and PHI was compromised, including, specifically, the significant costs that would be imposed on Plaintiffs and Class Members a result.  Defendant was aware of the risk of a data

---

[15]     *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/products/gao-07-737 (last accessed Apr. 5, 2021).

breach to its systems because such breaches have dominated the headlines in recent years, including during 2019.[16] Indeed, data breaches increased by 17% in 2019 from 2018.[17]

51.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data stored on and/or shared using its vendor's "legacy" file sharing platform, amounting to potentially more than one million individuals' detailed, personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

52.    Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiffs and Class Members are incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

---

[16]    *See e.g.*, Kelly Tyko, *LabCorp data breach exposes information of 7.7 million consumers*, USAToday (June 4, 2019), https://www.usatoday.com/story/money/2019/06/04/labcorp-data-breach-7-7-million-consumers-affected/1346264001/ (last accessed Apr. 5, 2021); Marie C. Baca, *DoorDash data breach affects 4.5 million users*, Washington Post (Sept. 26, 2019), https://www.washingtonpost.com/technology/2019/09/26/doordash-data-breach-affects-million-users/ (last Apr. 5, 2021); Emily Flitter and Karen Weise, *Capital One Data Breach Compromises Data of Over 100 Million*, New York Times (July 29, 2019), https://www.nytimes.com/2019/07/29/business/capital-one-data-breach-hacked.html (last accessed Apr. 5, 2021); Seth Fiegerman, *Yahoo Says 500 Million Accounts Stolen*, CNN Tech (Sept. 23, 2016), http://money.cnn.com/2016/09/22/technology/yahoo-data-breach/ (last accessed Apr. 5, 2021); Sara Ashley O'Brien, *Giant Equifax Data Breach: 143 Million People Could Be Affected*, CNN Tech (Sept. 8, 2017), https://money.cnn.com/2017/09/07/technology/business/equifax-data-breach/index.html (last accessed Apr. 5, 2021); Jim Finkel and David Henry, *Saks, Lord & Taylor Hit By Payment Card Data Breach*, Reuters (Apr. 3, 2018), https://www.reuters.com/article/legal-us-hudson-s-bay-databreach/saks-lord-taylor-hit-by-payment-card-data-breach-idUSKCN1H91W7 (last accessed Apr. 5, 2021); Bill Hutchinson, *87 million Facebook Users To Find Out If Their Personal Data Was Breached*, ABC News (Apr. 9, 2018), https://abcnews.go.com/US/87-million-facebook-users-find-personal-data-breached/story?id=54334187 (last accessed Apr. 5, 2021).

[17]    Meera Jagannathan, *Data breaches soared by 17% in 2019*, MarketWatch (Jan. 29, 2020), https://www.marketwatch.com/story/data-breaches-soared-by-17-in-2019-but-theres-some-good-news-too-2020-01-29 (last accessed Apr. 5, 2021).

53.     To date, Defendant has offered Plaintiffs and Class Members only two years of identity detection and resolution of identity theft through a single provider, Experian. The offered service is inadequate to protect Plaintiffs and Class Members from the threats they face for years to come, particularly in light of the PII and PHI at issue here.

54.     The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII and PHI of Plaintiffs and Class Members.

### Plaintiff Albert Abrams' Experience

55.     Beginning in or around 2019, Mr. Abrams started purchasing his prescribed pharmaceuticals from a Kroger-owned pharmacy in Los Angeles County, California.

56.     On or around March 11, 2021, Mr. Abrams received the Notice of Data Breach from Kroger, dated March 11, 2021.

57.     Beginning in or about February 2021, Mr. Abrams began receiving a dramatic increase in the number of unsolicited telephone calls and emails. This considerable uptick in marketing calls and emails focus on health-related products and health insurance solicitations. Mr. Abrams has not changed his health insurance coverage, and he does not purchase health-related products over the internet.

58.     As a result of the Data Breach, Mr. Abrams spent time dealing with the consequences of the Data Breach, which includes time spent on the telephone and sorting through his unsolicited emails, verifying the legitimacy of the Data Breach, exploring credit monitoring and identity theft insurance options, and self-monitoring his accounts. This time has been lost forever and cannot be recaptured.

59. Additionally, Mr. Abrams is very careful about sharing his PII and PHI. He has never knowingly transmitted unencrypted PII or PHI over the internet or any other unsecured source.

60. Mr. Abrams stores any documents containing his PII and PHI in a safe and secure location. Moreover, he diligently chooses unique usernames and passwords for his few online accounts.

61. Mr. Abrams suffered actual injury in the form of damages to and diminution in the value of his PII and PHI—a form of intangible property that Mr. Abrams entrusted to Defendant for the purpose of purchasing his prescribed medications, which was compromised in and as a result of the Data Breach.

62. Mr. Abrams suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

63. Mr. Abrams has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII and PHI, especially his Social Security number, in combination with his name, being placed in the hands of unauthorized third-parties and possibly criminals.

64. Mr. Abrams has a continuing interest in ensuring that his PII and PHI, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### Plaintiff Shelly Church's Experience

65. Plaintiff Shelly Church was employed by Kroger from in or about October 2018 to October 18, 2020.

66. She received a Notice of Data Breach, dated March 11, 2021, on or about that date.

67.     On or about March 16, 2021, Ms. Church was contacted by the Social Security Administration ("SSA"); her Social Security number, name and address had been used by an unauthorized third party on March 8, 2021 to apply for federal disability benefits. The fraudster had access to Ms. Church's employment record, because they used October 18, 2020 (the date she resigned from Kroger) as the date of the start of her fraudulently alleged disability. The fraudster used a telephone number based in Mississippi.

68.     On March 1, 2021, the Internal Revenue Service ("IRS") also contacted Ms. Church; something in the IRS's system flagged Ms. Church and she was asked to verify her identity before the IRS would release her 2020 tax refund.

69.     As a result of the Data Breach and the fraud, Ms. Church spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Data Breach, exploring credit monitoring and identity theft insurance options, self-monitoring her accounts, attempting to sign up for the free credit monitoring service offered by Kroger, and attempting to contact and communicating with the IRS and SSA. This time has been lost forever and cannot be recaptured.

70.     Ms. Church is not aware of any other data breaches that could have resulted in the theft of her Social Security number. She is very careful about sharing her PII and has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

71.     Ms. Church stores any and all documents containing her PII in a safe and secure digital location and burns any documents she receives in the mail that contain any of her PII or that may contain any information that could otherwise be used to compromise her identity. Moreover, although she does not have many online accounts, she chooses unique usernames and passwords.

72. Ms. Church suffered actual injury from having her PII exposed as a result of the Data Breach, including, but not limited to, damages to and diminution in the value of her PII—a form of intangible property that Ms. Church entrusted to Kroger when she applied for employment.

73. Ms. Church suffered lost money, time, annoyance, interference, and inconvenience as a result of the Data Breach and has increased concerns for the loss of her privacy.

74. Ms. Church has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of criminals.

75. Ms. Church has become worried about this theft of her PII and has a continuing interest in ensuring that her PII, which remains in the possession of Defendants, is protected and safeguarded from future breaches.

*Plaintiff Kevin Corbett's Experience*

76. Beginning in or around 2003, Mr. Corbett started purchasing his prescribed pharmaceuticals from a Kroger-owned pharmacy in Murrieta, California.

77. On or around March 1, 2021, Mr. Corbett received a Notice of Data Breach from Kroger, dated February 19, 2021.

78. As a result of the Data Breach, Mr. Corbett spent time dealing with the consequences of the Data Breach, which includes time verifying the legitimacy of the Data Breach, exploring credit monitoring and identity theft insurance options, self-monitoring his accounts, and signing up for and routinely using the credit monitoring services offered by Defendant. This time has been lost forever and cannot be recaptured.

79. Additionally, Mr. Corbett is very careful about sharing his PII and PHI. He has never knowingly transmitted unencrypted PII or PHI over the internet or any other unsecured source.

80.     Mr. Corbett stores any documents containing his PII and PHI in a safe and secure location and shreds older documents. Moreover, he diligently chooses unique usernames and passwords for his few online accounts.

81.     Mr. Corbett suffered actual injury in the form of damages to and diminution in the value of his PII and PHI—a form of intangible property that Mr. Corbett entrusted to Defendant for the purpose of purchasing his prescribed medications, which was compromised in and as a result of the Data Breach.

82.     Mr. Corbett suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

83.     Mr. Corbett has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII and PHI, especially his Social Security number, in combination with his name, being placed in the hands of unauthorized third-parties and possibly criminals.

84.     Mr. Corbett has a continuing interest in ensuring that his PII and PHI, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### Plaintiff Eula Douglas' Experience

85.     Plaintiff Eula Douglas has been employed by Kroger from on or about November 18, 2000.

86.     She received a Notice of Data Breach, dated March 11, 2021, on or about that date.

87.     Beginning in or about late January 2021, Ms. Douglas began receiving an increase in the number of unsolicited telephone calls. This considerable uptick in marketing calls confused Ms. Douglas until she received the Notice of Data Breach, which convinced her that the dramatic increase was caused by the Data Breach.

88.     As a result of the Data Breach, Ms. Douglas spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Data Breach, exploring credit monitoring and identity theft insurance options, self-monitoring her accounts, and signing up for the free credit monitoring service offered by Kroger. This time has been lost forever and cannot be recaptured.

89.     Ms. Douglas is not aware of any other data breaches that could have resulted in the theft of her Social Security number. She is very careful about sharing her PII and has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

90.     Ms. Douglas stores any and all documents containing her PII in a safe and secure digital location and destroys any documents she receives in the mail that contain any of her PII or that may contain any information that could otherwise be used to compromise her identity. Moreover, she diligently chooses unique usernames and passwords for her various online accounts.

91.     Ms. Douglas suffered actual injury from having her PII exposed as a result of the Data Breach, including, but not limited to, damages to and diminution in the value of her PII—a form of intangible property that Ms. Douglas entrusted to Kroger when she applied for employment.

92.     Ms. Douglas suffered lost money, time, annoyance, interference, and inconvenience as a result of the Data Breach and has increased concerns for the loss of her privacy.

93.     Ms. Douglas has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of criminals.

94. Ms. Douglas has become worried about this theft of her PII and has a continuing interest in ensuring that her PII, which remains in the possession of Defendants, is protected and safeguarded from future breaches.

### Plaintiff Delilah Parker's Experience

95. Plaintiff Delilah Parker was employed by Kroger from in or about March 2019 through August 2019. She started as a full-time employee and transitioned to a part-time employee before resigning to attend film school.

96. She received a Notice of Data Breach, dated March 11, 2021, on or about that date.

97. As a result of the Data Breach, Ms. Parker spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Data Breach, exploring credit monitoring and identity theft insurance options, self-monitoring her accounts, and signing up for the free credit monitoring service offered by Kroger. This time has been lost forever and cannot be recaptured.

98. Ms. Parker is not aware of any other data breaches that could have resulted in the theft of her Social Security number. She is very careful about sharing her PII and has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

99. Ms. Parker stores any and all documents containing her PII in a safe and secure digital location and destroys any documents she receives in the mail that contain any of her PII or that may contain any information that could otherwise be used to compromise her identity. Moreover, she diligently chooses unique usernames and passwords for her various online accounts.

100. Ms. Parker suffered actual injury from having her PII exposed as a result of the Data Breach, including, but not limited to, damages to and diminution in the value of her PII—a form of intangible property that Ms. Parker entrusted to Kroger when she applied for employment.

101.    Ms. Parker suffered lost money, time, annoyance, interference, and inconvenience as a result of the Data Breach and has increased concerns for the loss of her privacy.

102.    Ms. Parker has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of criminals.

103.    Ms. Parker has become worried about this theft of her PII and has a continuing interest in ensuring that her PII, which remains in the possession of Defendants, is protected and safeguarded from future breaches.

### *Plaintiff Martin Pinales' Experience*

104.    For several years prior to the data breach, Mr. Pinales purchased his prescribed pharmaceuticals from one or more Kroger-owned pharmacies in Montgomery or Cincinnati, Ohio.

105.    Mr. Pinales received the Notice of Data Breach from Kroger, dated February 19, 2021, on or around that date.

106.    On February 19, 2021, after Mr. Pinales' PII and PHI was compromised but just days before he received the Notice of Data Breach, Mr. Pinales received a fraud alert from the issuer of one of his credit cards and was advised that a charge of $0.63 was attempted on his credit card but rejected by the card issuer.  Mr. Pinales did not authorize this charge.

107.    As a result of the Data Breach, Mr. Pinales spent time dealing with the consequences of the Data Breach, which includes time spent on the telephone and sorting through his unsolicited emails, verifying the legitimacy of the Data Breach, exploring credit monitoring and identity theft insurance options, and self-monitoring his accounts. This time has been lost forever and cannot be recaptured.

108. Additionally, Mr. Pinales is very careful about sharing his PII and PHI. He has never knowingly transmitted unencrypted PII or PHI over the internet or any other unsecured source.

109. Mr. Pinales stores any documents containing his PII and PHI in a safe and secure location. Moreover, he diligently chooses unique usernames and passwords for his few online accounts.

110. Mr. Pinales suffered actual injury in the form of damages to and diminution in the value of his PII and PHI—a form of intangible property that Mr. Pinales entrusted to Defendant for the purpose of purchasing his prescribed medications, which was compromised in and as a result of the Data Breach.

111. Mr. Pinales suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

112. Mr. Pinales has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII and PHI, especially his Social Security number, in combination with his name, being placed in the hands of unauthorized third-parties and possibly criminals.

113. Mr. Pinales has a continuing interest in ensuring that his PII and PHI, which, upon information and belief, remain backed up in Defendant's possession, are protected and safeguarded from future breaches.

## V. CLASS ALLEGATIONS

114. Plaintiffs bring this nationwide class action on behalf of himself and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

115. The Nationwide Class that Plaintiffs seek to represent is defined as follows:

> All individuals residing in the United States whose PII or PHI (a) Defendant stored and/or shared using the file sharing platform referenced in Defendant's sample *Notice[s] of Data Breach* filed with the California Attorney General on or around February 19, 2021 and (b) was exposed to an unauthorized party as a result of the data breach referenced in sample *Notice[s] of Data Breach* Defendant filed with the California Attorney General on or around February 19, 2021 (the "Nationwide Class").

116. Pursuant to Rule 23, and in the alternative to claims asserted on behalf of the Nationwide Class, Plaintiff asserts claims on behalf of a separate subclass, defined as follows:

> All current or former customers of Defendant residing in the United States whose PII or PHI (a) Defendant stored and/or shared using the file sharing platform referenced in Defendant's sample *Notice[s] of Data Breach* filed with the California Attorney General on or around February 19, 2021 and (b) was exposed to an unauthorized party as a result of the data breach referenced in the sample *Notice[s] of Data Breach* Defendant filed with the California Attorney General on or around February 19, 2021 (the "Customers Class").

117. Pursuant to Rule 23, and in the alternative to claims asserted on behalf of the Nationwide Class, Plaintiff asserts claims on behalf of a separate subclass, defined as follows:

> All current or former employees of Defendant residing in the United States who are not current or former customers of Defendant and whose PII or PHI (a) Defendant stored and/or shared using the file sharing platform referenced in Defendant's sample *Notice[s] of Data Breach* filed with the California Attorney General on or around February 19, 2021 and (b) was exposed to an unauthorized party as a result of the data breach referenced in the sample *Notice[s] of Data Breach* Defendant filed with the California Attorney General on or around February 19, 2021 (the "Employees Class").

118. Pursuant to Rule 23, and in the alternative to claims asserted on behalf of the Nationwide Class, Plaintiff asserts claims on behalf of a separate subclass, defined as follows:

> All individuals residing in California whose PII or PHI (a) Defendant stored and/or shared using the file sharing platform referenced in Defendant's sample *Notice[s] of Data Breach* filed with the California Attorney General on or around February 19, 2021 and (b) was exposed to an unauthorized party as a result of the data breach referenced in the sample *Notice[s] of Data Breach*

Defendant filed with the California Attorney General on or around February 19, 2021 (the "California Class").

119.    Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

120.    Plaintiffs reserve the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

121.    <u>Numerosity</u>, Fed. R. Civ. P. 23(a)(1): The Nationwide Class (the "Class") is so numerous that joinder of all members is impracticable.  Defendant reported to the U.S. Department of Health and Human Services that more than 1.4 million individuals were affected by the Data Breach.

122.    <u>Commonality</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

    a.    Whether and to what extent Defendant had a duty to protect the PII and PHI of Plaintiffs and Class Members;

    b.    Whether Defendant had a duty not to disclose the PII and PHI of Plaintiffs and Class Members to unauthorized third parties;

    c.    Whether Defendant had a duty not to use the PII and PHI of Plaintiffs and Class Members for non-business purposes;

24

d.  Whether Defendant failed to adequately safeguard the PII and PHI of Plaintiffs and Class Members;

e.  Whether and when Defendant actually learned of the Data Breach;

f.  Whether Defendant adequately, promptly, and accurately informed Plaintiffs and Class Members that their PII and PHI had been compromised;

g.  Whether Defendant violated the law by failing to promptly notify Plaintiffs and Class Members that their PII and PHI had been compromised;

h.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.  Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII and PHI of Plaintiffs and Class Members;

k.  Whether Plaintiffs and Class Members are entitled to actual, damages, and/or statutory damages as a result of Defendant's wrongful conduct;

l.  Whether Plaintiffs and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

m.  Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

123.  Typicality, Fed. R. Civ. P. 23(a)(3): Plaintiff' claims are typical of those of other Class Members because all had their PII and PHI compromised as a result of the Data Breach, due to Defendant's misfeasance.

124. <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

125. <u>Adequacy</u>, Fed. R. Civ. P. 23(a)(4): Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiffs have retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

126. <u>Superiority and Manageability</u>, Fed. R. Civ. P. 23(b)(3): The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations,

like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

127. The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

128. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

129. Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

130. Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the PII and PHI of Class Members, Defendant may continue to act unlawfully as set forth in this Complaint.

131. Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the

Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

132.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.     Whether Defendant owed a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII and PHI;

b.     Whether Defendant breached a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII and PHI;

c.     Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d.     Whether an implied contract existed between Defendant on the one hand, and Plaintiffs and Class Members on the other, and the terms of that implied contract;

e.     Whether Defendant breached the implied contract;

f.     Whether Defendant adequately and accurately informed Plaintiffs and Class Members that their PII and PHI had been compromised;

g.     Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h.     Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII and PHI of Plaintiffs and Class Members; and,

      i.    Whether Plaintiffs and Class Members are entitled to actual damages, statutory damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

## COUNT I
### Negligence
### (On Behalf of Plaintiffs and the Nationwide Class)

133.    Plaintiffs and the Nationwide Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 132.

134.    As a condition of being customers or employees of Defendant, Defendant's current and former customers and employees were obligated to provide and entrust Defendant with certain PII and PHI, including their names, contact information, email addresses, phone numbers, home addresses, dates of birth, Social Security numbers, salary information, benefits information from the Kroger Employee Health Plan, information to process insurance claims, prescription information such as prescription number, prescribing doctor, medications names and dates, medical history, and/or clinical services.

135.    Plaintiffs and the Nationwide Class entrusted their PII and PHI to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their PII and PHI for business purposes only, and/or not disclose their PII and PHI to unauthorized third parties.

136.    Defendant has full knowledge of the sensitivity of the PII and PHI and the types of harm that Plaintiffs and the Nationwide Class could and would suffer if the PII and PHI were wrongfully disclosed.

137.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII and PHI of Plaintiffs and the Nationwide Class involved an unreasonable risk of harm to Plaintiffs and the Nationwide Class, even if the harm occurred through the criminal acts of a third party.

138. Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the PII and PHI of Plaintiffs and the Nationwide Class in Defendant's possession was adequately secured and protected.

139. Defendant also had a duty to exercise appropriate clearinghouse practices to remove former customers' and employees' PII and PHI it was no longer required to retain pursuant to regulations.

140. Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the PII and PHI of Plaintiffs the Nationwide Class.

141. Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiffs and the Nationwide Class. That special relationship arose because Plaintiffs and the Nationwide Class entrusted Defendant with their confidential PII and PHI, a necessary part of being customers or employees of Defendant.

142. Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiffs or the Nationwide Class.

143. A breach of security, unauthorized access, and resulting injury to Plaintiffs and the Nationwide Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices, including sharing and/or storing the PII and PHI of Plaintiffs and Class Members on its vendor's "legacy" file sharing platform.

144. Plaintiffs and the Nationwide Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII and PHI of Plaintiffs and the Nationwide Class, the

critical importance of providing adequate security of that PII and PHI, and the necessity for encrypting PII and PHI stored on Defendant's or its vendor's systems.

145.    Defendant's own conduct created a foreseeable risk of harm to Plaintiffs and the Nationwide Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein.  Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of the PII and PHI of Plaintiffs and the Nationwide Class, including basic encryption techniques freely available to Defendant.

146.    Plaintiffs and the Nationwide Class had no ability to protect their PII that was in, and possibly remains in, Defendant's possession.

147.    Defendant was in a position to protect against the harm suffered by Plaintiffs and the Nationwide Class as a result of the Data Breach.

148.    Defendant had and continues to have a duty to adequately disclose that the PII of Plaintiffs and the Nationwide Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiffs and the Nationwide Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

149.    Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiffs and the Nationwide Class.

150.    Defendant has admitted that the PII of Plaintiffs and the Nationwide Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

151.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiffs and the Nationwide Class by failing to implement industry protocols and exercise

31

reasonable care in protecting and safeguarding the PII of Plaintiffs and the Nationwide Class during the time the PII was within Defendant's possession or control.

152.    Defendant improperly and inadequately safeguarded the PII of Plaintiffs and the Nationwide Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

153.    Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the PII of Plaintiffs and the Nationwide Class in the face of increased risk of theft.

154.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and the Nationwide Class by failing to have appropriate procedures in place to detect and prevent dissemination of its current and former customers' and employees' PII and PHI.

155.    Defendant breached its duty to exercise appropriate clearinghouse practices by failing to remove former customers' and employees' PII and PHI it was no longer required to retain pursuant to regulations.

156.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiffs and the Nationwide Class the existence and scope of the Data Breach.

157.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiffs and the Nationwide Class, the PII of Plaintiffs and the Nationwide Class would not have been compromised.

158.    There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Plaintiffs and the Nationwide Class and the harm, or risk of imminent harm, suffered by Plaintiffs and the Nationwide Class.  The PII of Plaintiffs and the

Nationwide Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

159.    Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

160.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and the Nationwide Class.

161.    Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

162.    Plaintiffs and the Nationwide Class are within the class of persons that the FTC Act was intended to protect.

163.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Nationwide Class.

164.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Nationwide Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the

33

compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of Plaintiffs and the Nationwide Class; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and the Nationwide Class.

165. As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Nationwide Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

166. Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Nationwide Class have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

<u>**COUNT II**</u>
**Breach of Implied Contract**
**(On Behalf of Plaintiffs Abrams, Corbett, and Pinales and the Customers Class)**

167.    Plaintiffs Abrams, Corbett, and Pinales and the Customers Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 132.

168.    Defendant required Plaintiffs Abrams, Corbett, and Pinales and the Customers Class to provide and entrust their personal information, including names, email addresses, phone numbers, home addresses, dates of birth, Social Security numbers, information to process insurance claims, prescription information such as prescription number, prescribing doctor, medications names and dates, medical history, and/or clinical services, and/or other personal information, as a condition of being customers of Defendant.

169.    As a condition of being customers of Defendant, Plaintiffs Abrams, Corbett, and Pinales and the Customers Class provided and entrusted their personal information.  In so doing, Plaintiffs Abrams, Corbett, and Pinales and the Customers Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiffs Abrams, Corbett, and Pinales and the Customers Class if their data had been breached and compromised or stolen.

170.    Plaintiffs Abrams, Corbett, and Pinales and the Customers Class fully performed their obligations under the implied contracts with Defendant.

171.    Defendant breached the implied contracts it made with Plaintiffs Abrams, Corbett, and Pinales and the Customers Class by failing to safeguard and protect their personal and financial information and by failing to provide timely and accurate notice to them that personal and financial information was compromised as a result of the data breach.

35

172.     As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiffs Abrams, Corbett, and Pinales and the Nationwide Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

### COUNT III
### Breach of Implied Contract
### (On Behalf of Plaintiffs Church, Douglas, and Parker and the Employees Class)

173.     Plaintiffs Church, Douglas, and Parker and the Employees Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 132.

174.     Defendant required Plaintiffs Church, Douglas, and Parker and the Employees Class to provide and entrust their personal information, including names, email addresses, other contact information, dates of birth, Social Security numbers, salary information, benefits information from the Kroger Employee Health Plan, and/or other personal information, as a condition of being employees of Defendant.

175.     As a condition of being employees of Defendant, Plaintiffs Church, Douglas, and Parker and the Employees Class provided and entrusted their personal information.  In so doing, Plaintiffs Church, Douglas, and Parker and the Employees Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiffs Church,

Douglas, and Parker and the Employees Class if their data had been breached and compromised or stolen.

176.    Plaintiffs Church, Douglas, and Parker and the Employees Class fully performed their obligations under the implied contracts with Defendant.

177.    Defendant breached the implied contracts it made with Plaintiffs Church, Douglas, and Parker and the Employees Class by failing to safeguard and protect their personal and financial information and by failing to provide timely and accurate notice to them that personal and financial information was compromised as a result of the data breach.

178.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiffs Church, Douglas, and Parker and the Employees Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

## COUNT IV
### Invasion of Privacy
### (On Behalf of Plaintiffs and the Nationwide Class)

179.    Plaintiffs and the Nationwide Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 132.

180.    Plaintiffs and the Nationwide Class had a legitimate expectation of privacy to their PII and PHI and were entitled to the protection of this information against disclosure to unauthorized third parties.

181.    Defendant owed a duty to its current and former customers and employees, including Plaintiffs and the Nationwide Class, to keep their PII and PHI contained as a part thereof, confidential.

182.    Defendant failed to protect and released to unknown and unauthorized third parties the PII and PHI of Plaintiffs and the Nationwide Class.

183.    Defendant allowed unauthorized and unknown third parties access to and examination of the PII and PHI of Plaintiffs and the Nationwide Class, by way of Defendant's failure to protect the PII and PHI.

184.    The unauthorized release to, custody of, and examination by unauthorized third parties of the PII and PHI of Plaintiffs and the Nationwide Class is highly offensive to a reasonable person.

185.    The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiffs and the Nationwide Class disclosed their PII and PHI to Defendant as part of the current and former customers' and employees' relationships with Defendant, but privately with an intention that the PII and PHI would be kept confidential and would be protected from unauthorized disclosure. Plaintiffs and the Nationwide Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

186.    The Data Breach at the hands of Defendant constitutes an intentional interference with Plaintiffs' and the Nationwide Class's interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

187. Defendant acted with a knowing state of mind when it permitted the Data Breach to occur because it was with actual knowledge that its information security practices were inadequate and insufficient.

188. Because Defendant acted with this knowing state of mind, it had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiffs and the Nationwide Class.

189. As a proximate result of the above acts and omissions of Defendant, the PII and PHI of Plaintiffs and the Nationwide Class was disclosed to third parties without authorization, causing Plaintiffs and the Nationwide Class to suffer damages.

190. Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and the Nationwide Class in that the PII and PHI maintained by Defendant can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiffs and the Nationwide Class have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiffs and the Nationwide Class.

<u>**COUNT V**</u>
**Breach of Confidence**
**(On Behalf of Plaintiffs and the Nationwide Class)**

191. Plaintiffs and the Nationwide Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 132.

192. At all times during Plaintiffs' and the Nationwide Class's interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiffs' and the Nationwide Class's PII that Plaintiffs and the Nationwide Class provided to Defendant.

193. As alleged herein and above, Defendant's relationship with Plaintiffs and the Nationwide Class was governed by terms and expectations that Plaintiffs' and the Nationwide

Class's PII would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

194.    Plaintiffs and the Nationwide Class provided their PII to Defendant with the explicit and implicit understandings that Defendant would protect and not permit the PII to be disseminated to any unauthorized third parties.

195.    Plaintiffs and the Nationwide Class also provided their PII to Defendant with the explicit and implicit understandings that Defendant would take precautions to protect that PII from unauthorized disclosure.

196.    Defendant voluntarily received in confidence the PII of Plaintiffs and the Nationwide Class with the understanding that PII would not be disclosed or disseminated to the public or any unauthorized third parties.

197.    Due to Defendant's failure to prevent and avoid the Data Breach from occurring, the PII of Plaintiffs and the Nationwide Class was disclosed and misappropriated to unauthorized third parties beyond Plaintiffs' and the Nationwide Class's confidence, and without their express permission.

198.    As a direct and proximate cause of Defendant's actions and/or omissions, Plaintiffs and the Nationwide Class have suffered damages.

199.    But for Defendant's disclosure of Plaintiffs' and the Nationwide Class's PII in violation of the parties' understanding of confidence, their PII would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties.  The Data Breach was the direct and legal cause of the theft of Plaintiffs' and the Nationwide Class's PII as well as the resulting damages.

200.     The injury and harm Plaintiffs and the Nationwide Class suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiffs' and the Nationwide Class's PII.  Defendant knew or should have known its methods of accepting and securing Plaintiffs' and the Nationwide Class's PII was inadequate as it relates to, at the very least, securing servers and other equipment containing Plaintiffs' and the Nationwide Class's PII.

201.     As a direct and proximate result of Defendant's breach of its confidence with Plaintiffs and the Nationwide Class, Plaintiffs and the Nationwide Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of current and former customers and employees; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII and PHI compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and the Nationwide Class.

202.     As a direct and proximate result of Defendant's breaches of confidence, Plaintiffs and the Nationwide Class have suffered and will continue to suffer other forms of injury and/or

harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

## COUNT VI
**Violation of California's Consumer Protection Act**
**Cal. Civ. Code § 1798.150**
**(On behalf of Plaintiffs Abrams and Corbett and the California Class)**

203.    Plaintiffs Abrams and Corbett and the California Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 132.

204.    Defendant had duties to implement and maintain reasonable security procedures and practices with regard to the PII and PHI of Plaintiffs Abrams and Corbett and the California Class.

205.    Plaintiffs Abrams and Corbett and the California Class provided to Defendant their nonencrypted and nonredacted personal information as defined in § 1798.81.5 in the form of their PII.

206.    Defendant violated the California Consumer Privacy Act ("CCPA") by failing to prevent the PII and PHI of Plaintiffs Abrams and Corbett and the California Class from unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violations of its duties to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the PII and PHI of Plaintiffs Abrams and Corbett and the California Class.

207.    As a direct and proximate result of Defendant's acts, including, but not limited to, its failure to encrypt its systems and otherwise implement and maintain reasonable security procedures and practices, the PII and PHI of Plaintiffs Abrams and Corbett and the California Class was subjected to unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violation of its duties.

208.     As a direct and proximate result of Defendant's acts, including, but not limited to, their failure to encrypt their systems and otherwise implement and maintain reasonable security procedures and practices, Plaintiffs Abrams and Corbett and the California Class were injured and lost money or property, including but not limited to the loss of the California Class's legally protected interest in the confidentiality and privacy of their PII and PHI, nominal damages, and additional losses as described above.

209.     Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard the PII and PHI of Plaintiffs Abrams and Corbett and the California Class and that the risk of a data breach or theft was highly likely. Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the PII and PHI of Plaintiffs Abrams and Corbett and the California Class.

210.     Defendant is a corporation organized for the profit or financial benefit of its owners, with annual gross revenues exceeding $25 million, and collects PII and PHI as defined in Cal. Civ. Code § 1798.140.

211.     Plaintiffs Abrams and Corbett and California Class members seek relief under § 1798.150(a), including, but not limited to, injunctive or declaratory relief, and any other relief the court deems proper, to ensure Defendant hereinafter adequately safeguards the PII and PHI of Plaintiffs Abrams and Corbett and the California Class by implementing reasonable security procedures and practices. Such relief is particularly important because Defendant continues to hold the PII and PHI of Plaintiffs Abrams and Corbett and the California Class. These individuals have an interest in ensuring that their PII is reasonably protected.

212.    Plaintiff and the California Class members reserve the right to amend this Complaint as of right to seek actual and statutory damages and relief under Cal. Civ. Code § 1798.100, *et seq.*

**COUNT VII**
**Violation of the California Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200, *et seq*. – Unlawful Business Practices**
**(On Behalf of Plaintiffs Abrams and Corbett and the California Class)**

213.    Plaintiffs Abrams and Corbett and the California Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 132.

214.    Defendant has violated Cal. Bus. and Prof. Code § 17200, *et seq*., by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" as defined in Cal. Bus. Prof. Code § 17200 with respect to the services provided to the California Class.

215.    Defendant engaged in unlawful acts and practices with respect to the services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting the PII and PHI of Plaintiffs Abrams and Corbett and the California Class with knowledge that the information would not be adequately protected; and by storing the PII and PHI of Plaintiffs Abrams and Corbett and the California Class in an unsecure environment in violation of California's data breach statute, Cal. Civ. Code § 1798.81.5, which requires Defendant to take reasonable methods of safeguarding the PII and PHI of Plaintiffs Abrams and Corbett and the California Class.

216.    As a direct and proximate result of Defendant's unlawful practices and acts, Plaintiffs Abrams and Corbett and the California Class were injured and lost money or property, including but not limited to the price received by Defendant for the services, the loss of Plaintiffs

44

Abrams and Corbett and the California Class's legally protected interest in the confidentiality and privacy of their PII and PHI, nominal damages, and additional losses as described above.

217.    Defendant knew or should have known that Defendant's data security practices were inadequate to safeguard the PII and PHI of Plaintiffs Abrams and Corbett and the California Class and that the risk of a data breach or theft was highly likely, especially given Defendant's inability to adhere to basic encryption standards and data disposal methodologies. Defendant's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the California Class.

218.    Plaintiffs Abrams and Corbett and the California Class seek relief under Cal. Bus. & Prof. Code § 17200, *et seq.*, including, but not limited to, restitution to Plaintiffs Abrams and Corbett and the California Class of money or property that Defendant may have acquired by means of Defendant's unlawful, and unfair business practices, restitutionary disgorgement of all profits accruing to Defendant because of Defendant's unlawful and unfair business practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

<u>COUNT VIII</u>
**Violation of California's Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200, *et seq*. – Unfair Business Practices**
**(On Behalf of Plaintiffs Abrams and Corbett and the California Class)**

219.    Plaintiffs Abrams and Corbett and the California Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 132.

220.    Defendant engaged in unfair acts and practices with respect to the services by establishing the sub-standard security practices and procedures described herein by soliciting and collecting the PII and PHI of Plaintiffs Abrams and Corbett and the California Class with knowledge that the information would not be adequately protected and by storing the PII and PHI

Plaintiffs Abrams and Corbett and the California Class in an unsecure electronic environment. These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs Abrams and Corbett and the California Class.  They were likely to deceive the public into believing their PII and PHI was securely stored, when it was not. The harm these practices caused to Plaintiffs Abrams and Corbett and the California Class outweighed their utility, if any.

221.    Defendant engaged in unfair acts and practices with respect to the provision of services by failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect the PII and PHI of Plaintiffs Abrams and Corbett and the California Class from further unauthorized disclosure, release, data breaches, and theft. These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs Abrams and Corbett and the California Class.  They were likely to deceive the public into believing their PII and PHI were securely stored, when they were not. The harm these practices caused to Plaintiffs Abrams and Corbett and the California Class outweighed their utility, if any.

222.    As a direct and proximate result of Defendant's acts of unfair practices, Plaintiffs Abrams and Corbett and the California Class were injured and lost money or property, including but not limited to the price received by Defendant for the services, the loss of Plaintiffs Abrams and Corbett and the California Class's legally protected interest in the confidentiality and privacy of their PII and PHI, nominal damages, and additional losses as described above.

223.    Defendant knew or should have known that Defendant's data security practices were inadequate to safeguard the PII and PHI of Plaintiffs Abrams and Corbett and the California Class and that the risk of a data breach or theft was highly likely, including Defendant's failure to

properly encrypt files containing sensitive PII and PHI. Defendant's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs Abrams and Corbett and the California Class.

224. Plaintiffs Abrams and Corbett and the California Class seek relief under Cal. Bus. & Prof. Code § 17200, *et seq*., including, but not limited to, restitution to Plaintiffs Abrams and Corbett and the California Class of money or property that the Defendant may have acquired by means of Defendant's unfair business practices, restitutionary disgorgement of all profits accruing to Defendant because of Defendant's unfair business practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and Class Members, request judgment against Defendant and that the Court grant the following:

A.  For an Order certifying the Nationwide Class, the Customers Class, the Employees Class, and the California Class, and appointing Plaintiffs and their Counsel to represent each such Class;

B.  For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII and PHI of Plaintiffs and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiffs and Class Members;

C.  For injunctive relief requested by Plaintiffs, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members, including but not limited to an order:

    i.  prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii.   requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii.   requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiffs and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class Members;

iv.   requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiffs and Class Members;

v.   prohibiting Defendant from maintaining the PII and PHI of Plaintiffs and Class Members on a cloud-based database;

vi.   requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.   requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.   requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix.   requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised,

hackers cannot gain access to other portions of Defendant's systems;

x. requiring Defendant to conduct regular database scanning and securing checks;

xi. requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiffs and Class Members;

xii. requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii. requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv. requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv. requiring Defendant to meaningfully educate all Class Members about the

threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi.   requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.   For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

E.   For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.   For prejudgment interest on all amounts awarded; and

G.   Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand that this matter be tried before a jury.

Date: April 7, 2021                    Respectfully Submitted,

 /s/ Robert R. Sparks
Robert R. Sparks (0073573)
Richard S. Wayne (0022390)
STRAUSS TROY CO., LPA
150 East Fourth Street, 4th Floor
Cincinnati, OH  45202
Tel:  (513) 621-2120
Fax:  (513) 241-8259
Email:  rrsparks@strausstroy.com
Email:  rswayne@strausstroy.com

John A. Yanchunis
(*Pro Hac Vice application forthcoming*)
Ryan D. Maxey
(*Pro Hac Vice application forthcoming*)
**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505
Email: jyanchunis@ForThePeople.com
Email: rmaxey@ForThePeople.com

M. Anderson Berry
(*Pro Hac Vice application forthcoming*)
**Clayeo C. Arnold,
A Professional Law Corp.**
865 Howe Avenue
Sacramento, CA 95825
(916) 777-7777
Email: aberry@justice4you.com

*Attorneys for Plaintiffs and the Putative Class*

15186112.3